UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FRONTIER INSURANCE COMPANY IN REHABILITATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:08-cv-00531-SEB-DML |
| | ) | |
| J. ROE HITCHCOCK, | ) | |
| TERRY G. WHITESELL, | ) | |
| TIMOTHY S. DURHAM, | ) | |
| | ) | |
| Defendants. | ) | |

## Order on Frontier's Motion for Summary Judgment (Dkt. 32) and the Defendant Indemnitors' Motion for Summary Judgment (Dkt. 35)

### Introduction

Frontier Insurance Company in Rehabilitation ("Frontier") has brought this action against defendants J. Roe Hitchcock, Terry G. Whitesell, and Timothy S. Durham ("Indemnitors") to recover on a General Agreement of Indemnity ("GAI") the Indemnitors executed in favor of Frontier.[1] The parties agree that no material facts remain in dispute, and they have filed cross-motions for summary judgment. (Dkt. 53.) In addition, many of the material facts were conclusively established in earlier litigation involving these same parties. *Frontier Ins. Co. v. CT Acquisition Corp., et al,* 1:04-cv-1788-JDT-TAB ("2004 Case").

Having considered the undisputed facts – and primarily the facts that have developed since then-District Judge Tinder's Findings of Fact and Conclusions of Law resolving the 2004

---

[1] Frontier originally also named C.T. Acquisition Corp. and John Evans Manufacturing Company, Inc. as defendants, but they were later dismissed from this action. This order addresses all remaining claims in the case. References in this order to the Indemnitors mean the individual indemnitors.

Case – the court determines as a matter of law that Frontier is entitled to judgment of specific performance against the Indemnitors under the GAI, but that Frontier's claim for damages (in the form of attorney fees and costs it has incurred) requires further factual and legal development. The court therefore GRANTS IN PART AND DENIES IN PART Frontier's motion for summary judgment. The defendant Indemnitors' motion for summary judgment is DENIED.

**The Undisputed Facts**

A.      Facts Established in the 2004 Case[2]

In September of 1999, the predecessor of CT Acquisition Corp. ("CT") purchased Evans Trailers and John Evans Sales Co. Inc. ("Evans Company") under a Stock Purchase Agreement.[3] The Indemnitors were the principals of CT. The principals of the Evans Company included Thomas Spencer, Curtis Spencer, and Cameron Evans.

The consideration CT gave Evans Company for the stock included a promissory note in the face amount of $1.2 million, and the Stock Purchase Agreement further required that the Stock Purchase Agreement be secured by a business buy-out bond issued by Frontier in favor of Thomas Spencer, Curtis Spencer, and Cameron Evans (collectively, the "Spencers"). In December of 1999, CT (as Principal) and Frontier (as Surety) issued a Surety Bond in the initial amount of $1.2 million in favor of the Spencers. CT and the Spencers each paid half the premium for the Surety Bond. The Surety Bond provides that "in the event of a default under the [Stock Purchase] Agreement, Surety shall become liable for the immediate payment to [the

---

[2] The undisputed facts recited in this section were established by the written Findings of Fact and Conclusions of Law issued in January 2006 ("2006 Order") by Judge Tinder after a bench trial of the 2004 Case.

[3] The original purchaser was Trailer Holdings, Inc., which assigned its rights under the Stock Purchase Agreement to CT in December of 1999.

Spencers] of a specific sum equal to the total of all amounts due or to become due under the [Stock Purchase] Agreement which have not been paid to [the Spencers]."

Before issuing the Surety Bond, Frontier required the principals of CT (the Indemnitors here) to sign a General Agreement of Indemnity in favor of Frontier. The sections of the GAI pertinent here provide that CT and the Indemnitors jointly and severally agree:

> 1) At all times to indemnify and save the Company free and harmless from any and all losses, damages, costs and expenses of whatever kind or nature by reason of the execution of any of the said bonds including unpaid premiums of the Company.
>
> . . . [and]
>
> 3) Upon written demand from the Company, to deposit with the Company funds to meet all its liability under said bond or bonds promptly on request and before it may be required to make any payment thereunder and that any voucher or other evidence of payment by the Company of any such loss, damage, costs and expense shall be prima facie evidence of the fact and amount of the Undersigned's liability to the Company under this Agreement.

Several months after these transactions, the Indemnitors sold all of their shares in CT, and the business of CT later failed. CT ceased to exist sometime in 2002. CT was and is in default on its obligations under the Stock Purchase Agreement and promissory note.

On October 15, 2001, an Order of Rehabilitation was entered against Frontier in the state of New York. The Order of Rehabilitation provides that all persons are "enjoined and restrained from commencing or prosecuting any actions, lawsuits, or proceedings against Frontier, or the Superintendent as Rehabilitator." As a result of CT's default, the Spencers made a written demand on Frontier in July of 2002 for payment of the principal balance and all accrued and unpaid interest under the Stock Purchase Agreement and promissory note. Frontier forwarded that demand to the Indemnitors with a request that the Indemnitors give the matter their immediate attention.

3

Despite the injunction in the Order of Rehabilitation, the Spencers brought an action against Frontier in state court in South Carolina seeking recovery under the Surety Bond in the amount alleged then owing to them, $921,720, plus interest, costs, and fees ("Spencer Suit").[4] The Indemnitors engaged counsel in South Carolina to defend the Spencer Suit. Frontier removed the action to federal court, and in May of 2003, the South Carolina district court stayed the Spencer Suit because of the continuing rehabilitation of Frontier and the abstention doctrine recognized in *Burford v Sun Oil Co.,* 319 U.S. 315 (1943). Frontier later sent a notice to the Spencers disallowing their claim on the Surety Bond, and it also asserted in the Spencer Suit that it had no obligation under the Surety Bond because of "unforeseen changes" in CT.

In the spring of 2004, Frontier made a written demand to the Indemnitors under section 3 of the GAI that they deposit collateral in the amount of $1.2 million to be held by Frontier as security against any loss, damage, cost, or expense Frontier might incur on the Surety Bond. The Indemnitors did not do so. Asserting a conflict of interest, Frontier thereafter dismissed the counsel the Indemnitors had engaged to defend the Spencer Suit and substituted defense counsel of its choice.

B.    Resolution of the 2004 Case

Frontier brought an action in this court in 2004 against the Indemnitors. Frontier asserted in the 2004 Case that the Indemnitors had an obligation under section 3 of the GAI to deposit funds with Frontier to meet the liability that Frontier could have to the Spencers on the Surety Bond. Frontier maintained in that action that it was entitled to specific performance of the

---

[4] The Spencer Suit was brought by only two of the obligees under the Surety Bond, Thomas Spencer and Curtis Spencer. Thomas Spencer died during the pendency of the suit, so the case proceeded with plaintiff Curtis Spencer, individually and as Trustee for the Thomas R. Spencer Trust.

Indemnitors' obligation.  By the time the 2004 Case was tried on December 22, 2005, the judge

in the Spencer Suit had lifted the stay, allowing the Spencers to proceed against Frontier on the

Surety Bond, but the case had not been resolved and no liability of Frontier to the Spencers under

the Surety Bond had been established.

     This court determined, based on the facts established at trial (which are recited in relevant

part in section A above), that the obligation of the Indemnitors to make a deposit under section 3

of the GAI had not been triggered.  Judge Tinder's reasoning was based on several factors that

will guide the resolution of *this* case.  Briefly put here, Judge Tinder explained that the language

of section 3 requiring a security deposit to meet Frontier's "liability" was insufficient to apply

merely to a claim, demand, or threatened liability (like that represented by the ongoing Spencer

Suit), as opposed to a "mature liability."  2006 Order at 12.  He also noted that no liability to the

Spencers had been established (*id.* at 13-15), and that the language of section 3 "does not

evidence an intent by the parties that [the Indemnitors] be required to deposit funds with Frontier

*before the existence of a liability has been established."  Id.* at 14 (emphasis added).  He

therefore dismissed Frontier's specific performance claim on section 3 of the GAI.  *Id.* at 15.

     Significantly, Judge Tinder concluded his 2006 Order with the following guidance:

> The court's dismissal of [Frontier's claim under section 3 of the
> GAI] is a final determination of [Frontier's] claims as they are
> presently before the court, that is, whether [the Indemnitors] are
> presently obligated to deposit funds with [Frontier] . . . . By no
> means, though, should this be construed to be a final determination
> that [the Indemnitors] will *never* have an obligation under the GAI
> to pay funds to [Frontier] in the future . . . . Rather, this court's
> decision means simply that it is too early for Frontier to seek to
> collect indemnification.

*Id.* at 16 (emphasis in original).

C.     Factual Developments Following the 2006 Order

Frontier asserts that the future Judge Tinder presaged has now arrived.  On March 31, 2006, the United States District Court for the District of South Carolina entered a judgment in the Spencer Suit against Frontier in the total amount of $1,559,256.78 ("Spencer Judgment"). Alleging that the Spencer Judgment now provides the "liability" that triggers the Indemnitors' obligation to make the security deposit required by Section 3 of the GAI, Frontier filed this action on April 23, 2008, again seeking specific performance of the deposit obligation under section 3 of the GAI.  Shortly thereafter, on August 26, 2008, the Fourth Circuit Court of Appeals affirmed the Spencer Judgment.

One additional new fact is relevant to this action.  Frontier asserts that it has incurred a "loss":  $167,482.57 in attorney fees and expenses it has paid in defending the Spencer Suit. (Dkt. 33-2 and 33-3.)  Frontier claims that it is entitled to indemnity for these amounts under the general indemnity provision of the GAI, section 1.[5]

One fact has not changed since the 2006 Order, however.  Frontier is still in rehabilitation in New York, as it has been for eight and a half years.  No Plan of Rehabilitation has been presented to the court, and there is no evidence it will ever emerge from rehabilitation.  *(See* Deposition of Al Escobar, Dkt. 36 Ex. E at pp. 8-9.)  The Indemnitors maintain that Frontier's "liquidation is inevitable."  (Dkt. 36 at 15.)  Frontier has not yet paid the Spencers a dime as a result of its surety obligation.

---

[5] The complaint (Dkt. 1) seeks a declaratory judgment that the Indemnitors are liable for these amounts.  *See* Prayer for Relief ¶ 3.

**<u>Analysis</u>**

In the 2004 Case, Frontier argued that section 3 of the GAI creates a "collateral security agreement" that required the Indemnitors to deposit funds to secure their indemnity obligations upon the demand, claim, or threatened liability of Frontier on the Surety Bond.  Judge Tinder found the language of section 3 insufficient to trigger that requirement under the facts then presented.

In the present case, both Frontier and the Indemnitors continue to argue about whether section 3 is a "collateral security agreement," and they both cite a number of decisions on that issue.  But the issue here is not whether a particular label should be affixed to section 3; the question is whether the undisputed facts trigger the deposit obligation *under the language of the contract.*  Moreover, the primary authority to be consulted in answering that question is the 2006 Order, which finally determined the *law* applicable to the facts presented at that time.  *See, e.g., Harrell v. United States Postal Service*, 445 F.3d 913, 921 (7th Cir. 2005) (collateral estoppel provides that once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit involving a party to the prior litigation).

For several reasons, this court determines that the undisputed facts do now establish the Indemnitors' obligation under section 3 of the GAI to deposit funds "to meet all [Frontier's] liability" under the Surety Bond.  First, the Spencer Judgment is a "mature liability," and the fact that it could be subject to priorities or other adjustment because of the Frontier rehabilitation does not alter its fundamental status as a "liability."  Second, the Indemnitors ask the court to interpret section 3 in a manner inconsistent with basic principles of contract construction.  Finally, the fact that Frontier remains in rehabilitation or could be liquidated does not create the risk that any portion of the funds the Indemnitors are required to deposit could be used to satisfy

Frontier obligations other than the Spencer Judgment.  The court also determines, for the reasons explained in section D of this Analysis, that Frontier is not presently entitled to judgment as a matter of law on its damages claim for attorney fees and costs incurred in the Spencer Suit.

A.      The Spencer Judgment is a mature liability.

In his 2006 Order, Judge Tinder repeatedly distinguished "demands," "claims," "suits," and "threatened liabilities" from the term "liability" used in section 3.  He held that the language of the GAI requires "that the fact and amount of liability be established before a deposit with Frontier by [the Indemnitors] is required."  2006 Order at 14.  At another point, he noted that section 3 requires a "mature liability."  *Id.* at 12.

The Indemnitors contend that nothing has occurred that would alter the conclusion Judge Tinder reached in the 2006 Order.  They maintain that the fact a judgment has been entered against Frontier "does not impose any greater obligation upon Frontier to pay its surety obligation or pay the Spencer Judgment; nor does it impose any new obligation upon Defendants to provide collateral to Frontier.  No greater obligation exists now than existed when Judge Tinder entered his order . . . ." (Dkt. 36 at 9.)

The court does not agree that nothing has happened that changes the conclusion Judge Tinder reached in 2006.  The features of a "mature liability" Judge Tinder found lacking in the facts before him in the 2004 Case have now been established.  The Spencers have a final judgment entered by a federal district court and affirmed by the Fourth Circuit Court of Appeals. It is in a sum certain.  The Indemnitors argue that the Spencers' claims are still "speculative" because their judgment may not be enforced or the Spencers may not receive full value for it in the Frontier rehabilitation.  (*See* Dkt. 36 at 12-13.)  Those arguments blur two distinct concepts: liability and collectability.  Nothing in the 2006 Order requires proof that Frontier has already

8

made payment (or put another way, that the Spencers have collected from Frontier) to trigger the deposit obligation under section 3.

In advancing their interpretation of section 3, the Indemnitors also attempt to blur the *deposit* obligation of that section with the primary *indemnity* obligation created by section 1 of the GAI.  They maintain that it is the obligation "eventually paid" by Frontier – subject to the claims procedures of the rehabilitation proceeding – that they have indemnified.  That would likely be so if Frontier were seeking money damages under section 1 to indemnify it for its "losses, damages, costs and expenses . . . . by reason of the execution of [the Surety Bond]."  But Frontier's demand based on the Spencer Judgment is not for *damages* under the indemnity provision of section 1[6] but for specific performance of the Indemnitors' obligation to make a *deposit*.

The Indemnitors also suggest that "liability" is an ambiguous term that must be read in light of the circumstances in which the parties now find themselves. (Dkt. 36 at 10-11.)  Under Indiana law (which the parties agree governs here) and the common law of virtually every state, when the terms of a contract are ambiguous or capable of more than one interpretation, the court will construe them to give effect to the intent of the parties at the time they entered the contract. *See, e.g., George S. May Int'l Co. v. King*, 629 N.E.2d 257, 260 (Ind. Ct. App. 1994).  And as the Indemnitors themselves proclaim, "[i]n 1999 when the GAI was executed, the Parties did not contemplate that Frontier would go into a seemingly interminable rehabilitation." (Dkt. 36 at 11.) To reject the plain meaning of the term "liability" because New York insurance company

---

[6] As noted above, Frontier is seeking a declaratory judgment that the Indemnitors are liable for damages under the indemnity provision for amounts Frontier has already paid for attorney fees and costs in defending the Spencer Suit.  (*See* Dkt. 33 ¶ 9.)  That claim is addressed in section D of this Analysis.

rehabilitation procedures may affect Frontier's ultimate payment would require the court to ignore a cardinal rule of contract construction and the undisputed facts of this case.

      B.    <u>The Indemnitors' reading of section 3 is inconsistent with other basic principles of contract construction.</u>

In addition to asking the court to ignore the intent of the parties at the time their contract was made, the Indemnitors' arguments are inconsistent with other basic principles of contract construction.

      1.    The court is to ascertain the meaning of the contract as a whole and seek to harmonize its provisions.

The crux of the Indemnitors' argument is that the Spencer Judgment is not yet a "liability" of Frontier because, as a result of Frontier's "woeful financial condition, it is unlikely the Spencers will receive full value for their judgment." (Dkt. 36 at 13.) "Liability," however, does not equate with "payment." If construed that way, it would be in direct conflict with the express language of section 3 that Frontier can demand a deposit of security from the Indemnitors "before it may be required to make payment" under the Surety Bond. A court must interpret the contract as a whole and must accept an interpretation that harmonizes its provisions as opposed to placing them in conflict. *See, e.g., Fardy v. Physicians Health Rehab. Services, Inc.*, 529 N.E.2d 879, 884 (Ind. Ct. App. 1988). The court must therefore reject an interpretation of section 3 that would require payment by Frontier before the deposit requirement can arise.[7]

Section 3 also provides that "any voucher or other evidence of payment by the Company of any such loss, damage, costs and expense shall be prima facie evidence of the fact and amount of the Undersigned's liability to the Company under this Agreement." The Indemnitors make

---

[7] Furthermore, it would make no sense for the Indemnitors to be required to make a "deposit" after the Spencer Judgment has been paid. If the Spencer Judgment has been paid, it is not a "liability" of Frontier anymore, and the sums the Indemnitors would be required to pay would not be a deposit; they would be indemnity damages recoverable by Frontier.

much of this language, but it will not carry the cargo they load upon it.  First, nothing in the language of section 3 makes the "voucher or other evidence" a precondition for the deposit obligation; it is merely "prima facie evidence" of the Indemnitors' liability.[8]  Second, interpreting this portion of section 3 as a precondition for the deposit obligation would put it in direct conflict with the language immediately preceding it – that a deposit must be made upon written demand" and *before* [Frontier] may be required to make payment [under the Surety Bond].

> 2.    The Indemnitors' reading of section 3 would render the provision meaningless.

Another tenet of contract construction is that a court should not adopt an interpretation that renders a provision meaningless or superfluous.  *See, e.g., Steve Silveus Ins., Inc. v Goshert*, 873 N.E.2d 165, 174 (Ind. Ct. App. 2007) (in construing a contract, court presumes that all provisions are there for a purpose and will, if possible, avoid an interpretation that would render a provision meaningless).  If the obligation to make a security deposit under section 3 does not arise – as the Indemnitors urge – until Frontier has been required actually to pay the Spencer Judgment or some portion of it in the rehabilitation proceeding, then the "deposit" portion of section 3 is meaningless.  Section 1 (the indemnity obligation) would cover that circumstance.

C.    Frontier's rehabilitation or the possibility of its eventual liquidation does not put the Indemnitors' deposit at risk.

Judge Tinder's 2006 Order voiced a concern that could arise if the Indemnitors were required to deposit funds with Frontier:

---

[8] It is also noteworthy that this reference to "prima facie evidence" of "liability" has nothing to do with the "liability" of *Frontier* that triggers the deposit obligation, but rather refers expressly to proof of the liability of the *Indemnitors*.  The court also observes that a more precise drafter would likely have put this language in a different section of the GAI.

> Moreover, absolutely no assurances have been made to the court
> that any deposit by Defendants with Frontier would be held solely
> for use in relation to the [Spencer Suit] or to reimburse Defendants.
> In other words, there is no assurance that any funds so deposited
> would not be commingled in a general fund for the benefit of all
> Frontier's creditors in the Rehabilitation proceeding.

2006 Order at 15. And though the Indemnitors don't expressly argue this, their position seems to

be that it would be unfair for Frontier to collect sums from them that Frontier may ultimately not

be required to pay to the Spencers.

Two developments since the 2004 Case permit a resolution that will avoid these risks.

First, Frontier has presented unrefuted evidence that deposits of collateral are segregated and are

not considered part of the Frontier estate in rehabilitation unless and until they are drawn upon to

pay losses in accordance with the bond documents. (Affidavit of Al Escobar (Dkt. 33-8 ¶ 6).)[9]

Further, if Frontier is liquidated, the collateral accounts are maintained separate from the

liquidation estate. *Id.* ¶ 8. Finally, once the bonds are discharged or released with no further

payments due, the unused collateral is returned to the depositor. *Id.* ¶ 7.

Second, Frontier's complaint requests as alternative relief that the court order the

Indemnitors to make their deposit to the court.[10] On the basis of that request, which we view as

well made, the court's judgment will require the deposit to be made with the *court*. The court

---

[9] These facts do not allay all concerns. The Escobar Affidavit is vague on the issue of whether deposits for indemnity obligations are segregated from *one another*. In other words, it is still not clear to the court that no portion of a deposit on this particular GAI can be used to satisfy Frontier's surety obligation on a different bond. In any event, this ambiguity will be of no effect here because the *court* will hold the deposit solely for the purposes of the Spencer Judgment. *See infra.*

[10] Both paragraph 21 of the complaint and paragraph 1 of the prayer for relief request deposit to the court as alternative relief. Those paragraphs refer to CT as indemnitor, which is no longer a party. On the basis of those requests and the prayer for "all other relief to which the Plaintiff may properly be entitled" (¶ 5), the court adopts this form of relief against the remaining defendants (Indemnitors).

will hold those funds subject to (1) an order in Frontier's rehabilitation directing that the funds

on deposit be paid directly to the Spencers in satisfaction of their judgment *or* (2) a

determination by this court that the Frontier rehabilitation proceeding is not entitled to full faith

and credit by this court and that the deposit is subject to execution of the Spencer Judgment.[11]  If

neither of these determinations occurs, the deposit will be returned to the Indemnitors.[12]

> D.   <u>Frontier has not yet established its entitlement to judgment for indemnity damages.</u>

Frontier maintains that it has already incurred certain losses in the form of attorney fees

and costs in the defense of the Spencer Suit.  The Indemnitors do not specifically contest the

reasonableness of the amount of the fees,[13] but counter that these losses were not reasonably

incurred because the Indemnitors had been providing a defense of the Spencer Suit and Frontier

prevented them from continuing to do so.

Frontier argues that it was reasonable for it to reject the Indemnitors' defense of the

Spencer Suit because there was a conflict of interest between Frontier and the Indemnitors.

Frontier cites in support of its contention a decision from the D.C. Circuit, *Ideal Electronic

Security Co., Inc. v Int'l Fidelity Ins. Co,* 129, F.3d 143, 148-51 (D.C. Cir. 1997).  In that case,

an indemnitor had refused the surety's demand for a deposit under the bond, and the surety

refused to permit the indemnitor to assume the defense of the underlying case.  The court held

---

[11] Following enforcement of this judgment and Frontier's collection of the deposit, the court would entertain an intervention motion from Curtis Spencer for the purpose of asserting that argument against the fund created by the deposit.

[12] This procedure also ensures that Frontier will not be unjustly enriched by receiving as a deposit any funds not ultimately paid to the Spencers.

[13] The Indemnitors do complain that Frontier has not offered evidence of the reasonableness of the amount, and Frontier responds that the language of section 3 of the GAI makes its proof of payment prima facie evidence of the amount of the Indemnitors' liability for fees.  The court need not decide this issue now because, as explained *infra*, Frontier's entitlement to judgment as a matter of law on this claim has not yet been established.

that, under those circumstances, no reasonable fact finder could conclude that the surety

company had acted unreasonably in refusing the indemnitor's tender of a defense.  *Id.* at 151.

In *Ideal*, however, there was no dispute that the deposit the surety had demanded was

required under the subject agreement or that the deposit was a condition of the indemnitor's right

to provide a defense.  Here, there is no assertion that a deposit was a contractual condition to the

Indemnitors' providing a defense.  And this court's 2006 Order establishes that in 2004 when

Frontier substituted counsel of its choice in the Spencer Suit for the Indemnitors' counsel, the

Indemnitors *were not in breach* of their obligation to make a deposit.

Frontier also cites *United Riggers & Erectors, Inc. v Marathon Steel Co.,* 725 F.2d 87

(10th Cir. 1984), for the general proposition that a surety may properly hire its own attorney to

defend the underlying action when a conflict of interest exists between the surety and the

indemnitor.  In that case, the surety demonstrated that the indemnitor was not in a position to

assert all the defenses the surety would be able to assert.  *Id.* at 90.  Although Frontier has

generally asserted a "conflict" between its interests in the Spencer Suit and the interests of the

Indemnitors, it has not yet demonstrated specifically what that conflict was.  For the reasons

explained above, it cannot simply rely on the Indemnitors' claimed breach of the GAI, because

the Indemnitors had not breached the GAI in 2004.  For these reasons, the court cannot enter

judgment as a matter of law on this claim at this time.  It requires further factual and legal

development that the court will permit at the same time it considers the disposition of any deposit

recovered from the Indemnitors as a result of the judgment of specific performance.

## Conclusion

For the reasons explained above, Frontier's motion for summary judgment is GRANTED

IN PART AND DENIED IN PART.  The defendants' motion for summary judgment is

DENIED.  A judgment of specific performance in favor of Frontier and against the defendants

will be entered consistent with this order.  Further, the court directs that a final judgment on the

claim for specific performance be made under Fed. R. Civ. P. 54(b), there being no just reason

for delay.  The court retains jurisdiction over this case (1) to adjudicate Frontier's claim for

indemnity damages incurred in defense of the Spencer Suit and (2) to address the disposition of

any funds received for deposit with the court under the judgment of specific performance.

Further, this matter is set for a telephone status conference with the magistrate judge on

**July 20, 2010, at 3:00 p.m. (Eastern).**  Counsel are to contact the court at 317.229.3630 to

participate in the conference.

The Clerk is directed to serve a copy of this Order on LAS Part 19 of the Supreme Court

of the State of New York, 60 Centre Street, New York, NY.  Re:  Index No. 405090/01.  Frontier

is ordered to serve a copy of this Order on the Superintendent in Rehabilitation.

So ORDERED.


Date:  03/30/2010


SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Sara R. Bradbury
LEWIS & KAPPES
sbradbury@lewis-kappes.com

Neil E. Lucas
nelattorney@msn.com

Nicholas E. Plopper
STEPHEN PLOPPER & ASSOCIATES
nick@sploplaw.com

Stephen Edwards Plopper
STEPHEN PLOPPER & ASSOCIATES
splopper@sploplaw.com

Thomas E. Roma Jr.
PARKER & O'CONNELL
troma@parkeroconnell.com

James C. Wade
PARKER & CONNELL PLLC
jwade@parkeroconnell.com

James E. Zoccola
LEWIS & KAPPES
jzoccola@lewis-kappes.com