# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| FRONTIER INSURANCE COMPANY IN REHABILITATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Cause No. 1:08-cv-00531-TWP-DML ) |
| J. ROE HITCHCOCK, TERRY G. WHITESELL and TIMOTHY S. DURHAM, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court for disposition on the merits of Frontier Insurance Company in Rehabilitation's (hereinafter "FICR") claim for relief on the remaining issues before the Court in an action to enforce a General Agreement of Indemnity (hereinafter "GAI") executed by the Defendants Timothy S. Durham, J. Roe Hitchcock, and Terry G. Whitesell (hereinafter collectively "Indemnitors" or "Defendants"), in favor of Frontier Insurance Company (hereinafter "Frontier" or "Surety"), FICR's predecessor in interest. Specifically, FICR seeks to compel the Defendants to deposit funds to be held as collateral for the Defendants' indemnity obligations with respect to claims asserted against Frontier on a Business Buy-Out Bond (hereinafter "the Surety Bond") executed by Frontier at the request of the Defendants and, the parties seek a determination on whether any such deposit should include pre-judgment and/or post-judgment interest. FICR also seeks recovery of attorneys' fees incurred by FICR in defending the claims asserted against the Bond, in litigation filed in South Carolina. The parties have agreed and stipulated to the relevant facts necessary for a determination on these issues. After directing the parties to file briefs summarizing their arguments and the law applicable to

same, the Court has reviewed them, along with submitted exhibits and makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## I. FINDINGS OF FACT

On September 3, 1999 Trailer Holdings, Inc. entered into a Stock Purchase Agreement (the "Agreement"), with Thomas R. Spencer, Curtis M. Spencer, Cameron M. Evans, John Evans Manufacturing Company, Inc. d/b/a Evans Trailers and John Evans Sales Co., Inc.. The Agreement provided at Section 3.3 that a Promissory Note in the face amount of $1,200,000.00 would be secured by a Surety Bond issued by Frontier.

On or about December 13, 1999, the rights of Trailer Holdings, Inc. in the Agreement were assigned to CT Acquisition Corp., as Principal (hereinafter "Principal" or "CT Acquisition Corp."). CT Acquisition Corp. and Defendants executed the GAI in favor of Frontier. CT Acquisition Corp. and Defendants jointly and severally agreed to:

1. At all times to indemnify and save the Company free and harmless from any and all losses, damages, costs and expenses of whatever kind or nature by reason of the execution of any of the said bonds including unpaid premiums of the Company.
2. That the Company shall have the right to adjust, settle, or compromise any claim, demand, suit or judgment upon any one or more of said bonds.
3. Upon written demand from the Company, to deposit with the Company funds to meet all its liability under said bond or bonds promptly on request and before it may be required to make payment thereunder and that any voucher or other evidence of payment by the Company of any such loss, damage, costs and expense shall be prima-facie evidence of the fact and amount of the Undersigned's liability to the Company under this Agreement.

On December 14, 1999, CT Acquisition Corp. and Frontier issued the Surety Bond in favor of Thomas R. Spencer, Curtis M. Spencer and Cameron Evans (hereinafter collectively "Obligee" or "Spencers") in the initial penal amount of $1,200,000.00. The Surety Bond recites that under the terms of the Agreement, CT Acquisition Corp. agreed to pay the Spencers one

principal payment of $1,200,000.00 on the 1st day of January, 2005 and to secure said payment by the delivery of a Surety Bond to the Spencers.

The Surety Bond provides "in the event of a default under the Agreement, Surety shall become liable for the immediate payment to Obligee of a specific sum equal to the total of all amounts due or to become due under the Agreement which have not been paid to Obligee." Frontier received a five year pre-paid premium of $75,000.00 to issue the Surety Bond. Fifty percent of the premium was paid by CT Acquisition Corp. as the principal and fifty percent was paid by the Spencers as the obligee.

On June 20, 2000, the Defendants sold all their shares in CT Acquisition Corp. to Trailer Equity Holdings, Inc., a Delaware Corporation owned by Fox Capital I, LLP, Champaign, Illinois. Subsequent to this sale the business of CT Acquisition Corp. failed. To the best joint knowledge of both Frontier and Defendants, CT Acquisition Corp. ceased to exist sometime in the calendar year 2002.

On October 15, 2001 an Order of Rehabilitation was entered against Frontier by the Supreme Court of the State of New York, where Frontier is domiciled. Pursuant to the Order of Rehabilitation all persons were "enjoined and restrained from commencing or prosecuting any actions, lawsuits, or proceedings against Frontier, or the Superintendent as Rehabilitator."[1] Frontier remains in Rehabilitation and there is no prognosis as to when, if ever, it will emerge from Rehabilitation.

On July 2, 2002, Frontier received a letter from counsel for the Obligee making "Notice of Default and Demand" on Frontier for payment of the principal balance and all accrued and unpaid interest under the Agreement. This letter was forwarded to the Defendants (Indemnitors)

---

[1] On or about November 20, 2005, Spencer filed an Objection to Frontier's Notice of Determination in the rehabilitation proceeding.

on July 29, 2002 with a request to the Indemnitors to give the matter their immediate attention. Frontier sent a notice to Obligee disallowing its claim.

On September 13, 2002, the Spencers filed suit against Frontier in the Court of Common Pleas in Sumter County, South Carolina seeking recovery under the Surety Bond (hereinafter the "South Carolina Litigation"). The action was subsequently removed to the United States District Court for the District of South Carolina, Columbia Division, c/a No. 3:02-3431 JFA., Joseph F. Anderson, Jr. presiding. Frontier filed defenses in the South Carolina Litigation alleging it has no liability under the Surety Bond due to unforeseen changes in the Principal. Defendants engaged South Carolina firm Haynsworth Sinkler Boyd, P.A. of Columbia, South Carolina in October of 2002 and paid the costs of defending the South Carolina litigation on behalf of Frontier until the substitution of counsel in November of 2004. Defendants paid a total of $43,983.16 in attorneys' fees to Haynsworth Sinkler Boyd, P.A.[2] to defend Frontier in the South Carolina litigation.

On May 27, 2003 a stay was issued in the South Carolina litigation based on the continuing rehabilitation of Frontier and the Burford abstention doctrine. By letter dated April 28, 2004 to Counsel for Defendants, Durham and Whitesell, and by letter dated May 6, 2004 to Defendant Hitchcock, Frontier demanded that the Defendants deposit collateral in the amount of $12,000,000.00 to be held by Frontier as security against any loss, damage, cost, or expense which Frontier may incur as a result of the execution of the Surety Bond.

On November 15, 2005, Judge Anderson issued an Order lifting the stay of the South Carolina Litigation and allowing the Obligee to proceed in that court. The damages claimed by the Obligee in the South Carolina Litigation were the principal amount of $921,720.00, plus

---

[2] Defendants stipulate to the amount of fees and the reasonableness of the hourly rates charged for fees incurred by Frontier following its substitution of counsel in defense of the South Carolina litigation.

4

interest from June 1, 2002, its costs, expenses and attorney's fees. On March 31, 2006, the United States District Court for the District of South Carolina entered a judgment in the South Carolina Litigation against Frontier in the total amount of $1,559,256.78. On August 26, 2008, the Fourth Circuit Court of Appeals affirmed the judgment.

Frontier brought an action in this court in 2004 against the Indemnitors. In the 2004 case, Civil Action No. 1:04-cv-1788-JDT-TAB, the pertinent claims were dismissed by Judge Tinder of this Court without prejudice. In its opinion, the Court found that the obligation of the Indemnitors to make a deposit under Section 3 of the GAI had not been triggered and that Frontier's claims were not yet ripe. The case was again before the Court in 2006 on the parties' cross Motions for Summary Judgment. On March 30, 2010, this Court granted in part and denied in part Frontier's motion for summary judgment, and denied the Defendants' motion for summary judgment.

In an Estate Inventory filed by Curtis Spencer on behalf of his deceased Father, Thomas Spencer, Curtis Spencer valued the CT Acquisition Note, as Guaranteed by Frontier at $ -0-.

## II. CONCLUSIONS OF LAW

### A. Amount Of Deposit

The Defendants present their arguments as if the issues of the GAI, its interpretation, and the necessary triggering event, have not already been thoroughly discussed and decided. This case has previously come before the Court twice, with resulting Orders setting out these very issues. Defendants contend that because of Frontier's status in rehabilitation, Frontier will never be required to pay the full amount of the Spencer judgment and thus Defendants' obligation under the GAI is not triggered. Through this argument and others, Defendants would have this Court revisit and decide issues already thoroughly analyzed by this Court. The Court declines to

5

do so. In the Court's March 30, 2010 Order, the Court was presented with identical issues relating to the question of whether the GAI was a collateral security agreement. The Court stated the following:

> In the present case, both Frontier and the Indemnitors <u>continue to argue about whether section 3 is a "collateral security agreement."</u> … this court determines that the undisputed facts do *now* establish the Indemnitors' obligation under section 3 of the GAI *to deposit funds "to meet all [Frontier's] liability" under the Surety Bond*.

Dkt. 72 at 7 (emphasis added).

At this stage of litigation, the principle issues of this case have been resolved. On March 30, 2010, this Court articulated and applied the findings of facts and conclusions of law in accordance with the January 13, 2006 Order granting Defendants' Motion to Dismiss.[3] The Court agrees with the sound reasoning of the March 30, 2010 Order regarding the triggering event necessary under the GAI and supports its conclusions. Defendants did not file a motion under Fed. R.Civ.P. 59(e) to alter or amend the ruling on the motions for summary judgment and has not filed any motion to have this Court reconsider that Judgment. The Court will not address arguments and issues previously presented and decided under sound reasoning. The Court agrees with Plaintiff that the issue before the Court is not whether the Defendants are obligated to deposit funds with the Court, but rather what amount is to be deposited.

FICR submits that, based on the stipulated facts and record and the applicable law, at minimum the sum of $1,559,256.78 should be deposited by the Defendants pursuant to the terms of the Court's Judgment entered March 30, 2010. As this Court found in its March 30, 2010 Order, the GAI requires the Defendants to deposit, before FICR is required to make payment, funds "*to meet all [Frontier's] liability*" under the Bond. Consistent with the Court's previous

---

[3] The Cause number for this Order was 1:04-cv-01788-JDT-TAB.

6

finding that the judgment in the South Carolina Action represented a "mature liability" of FICR, the amount required to "meet all of [Frontier's] liability" was, at the time of filing, $1,559,256.78.

B. **Interest Calculation**

Although this Court's March 30, 2010 Order established that a judgment had been entered against FIRC that constituted a mature liability sufficient to trigger Defendants' obligations under Section 3 of the GAI, the consideration of pre-judgment and post-judgment interest was not addressed. The Court will now address this issue.

FICR submits that, based on the stipulated facts and applicable law, the deposit[4] with the Court should include pre-judgment interest at the rate of eight percent (8%) per annum from the date of March 31, 2006 and post-judgment interest at the prevailing federal judgment rate from the date of March 30, 2010. Defendants assert that because a judgment amount has never been set for a deposit, any amount of pre- and post-judgment interest awarded in favor of Frontier would be speculative and inequitable. The Court is persuaded in part.

Indiana law recognizes that amounts which are due and which are specific, liquidated in amount, or subject to calculation allow for the assessment of pre-judgment interest. *Wilson v. Montgomery Ward & Co., Inc.*, 610 F. Supp. 1035, 1041 (N. D. Ind. 1985). Pre-judgment interest is awarded to fully compensate an injured party for the lost use of money. *Fackler v. Powell*, 923 N.E.2d 973, 977 (Ind. App. 2010); *see Cincinnati Ins. Co. v. BACT Holdings, Inc.*, 723 N.E.2d 436, 441 (Ind. Ct. App. 2000), *trans. denied.* A pre-judgment interest award is justified only where there has been an unreasonable delay in payment of an ascertainable

---

[4] The Court's March 30, 2010 Order required that the deposit to be made with the court. The Court will hold those funds subject to (1) an order in Frontier's rehabilitation directing that the funds on deposit be paid directly to the Spencers in satisfaction of their judgment *or* (2) a determination by this Court that the Frontier rehabilitation proceeding is not entitled to full faith and credit by this court and that the deposit is subject to execution of the Spencer Judgment. If neither of these determinations occurs, the deposit will be returned to the Indemnitors.

7

amount. *R & R Real Estate Co., LLC v. C & N Armstrong Farms, Ltd.,* 854 N.E.2d 365, 371 (Ind. Ct. App. 2006), *reh'g denied.* Whether there has been an unreasonable delay in payment so as to justify an award of interest is a question of fact. *Clow Corp. v. Ross Twp. School Corp.,* 384 N.E.2d 1077, 1083 (Ind. App. 1979). Regarding post-judgment interest, once an amount is established for the judgment, post-judgment interest should apply to the judgment until the amount of the judgment is deposited with the Court under 28 U.S.C. §1961. *See Student Loan Marketing Association v. Lipman*, 45 F.3d 173, 176 (7th Cir. 1995).

Under the facts presented in this case, undue delay on a specific sum cannot be demonstrated and pre-judgment interest is not warranted. FICR, in accordance with this Court's Judgment, is however entitled to post-judgment interest on the sum of $1,559,256.78, pursuant to 28 U.S.C. §1961. FICR concedes in its trial brief that once an amount is established for the judgment, post-judgment interest applies automatically at the federal judgment rate. This Court finds that it is most equitable to access post-judgment interest from the date of this Order, which provides entry of the judgment amount, until that amount is deposited with the Clerk.

### C. Attorney's Fees

The final issue left to be decided by this Court is the awarding of attorneys' fees incurred by FICR in its defense of the South Carolina litigation. FICR seeks the amount of attorneys' fees incurred in defending the claim against the Bond in South Carolina after it relieved counsel appointed by Defendants and sought and obtained its own independent counsel. FICR submits that, based on the stipulated facts and record and the applicable law, FICR is entitled to recovery of its attorneys' fees in the amount of $167,482.57 incurred in defending the claims against the Bond. Under Indiana law, an indemnitee is entitled to recover, from its indemnitors, its attorneys' fees incurred in defending the claim subject to the indemnification agreement. *See*

*Tack's Steel Corp. v. Arc Constr. Co., Inc.*, 821 N.E.2d 883, 890 (Ind. Ct. App. 2005). Here, the parties have stipulated that the hourly rates charged by counsel secured by Plaintiff were reasonable, so the outstanding question relates only to whether FICR's change in counsel was reasonable. Although the Court did not decide this issue in its March 30, 2010 opinion, it did provide guidance to the Court's analysis. In the March 30, 2010 Order, the Court stated the following:

> Although Frontier has generally asserted a "conflict" between its interests in the Spencer Suit and the interests of the Indemnitors, it has not yet demonstrated specifically what that conflict was. … [I]t cannot simply rely on the Indemnitors' claimed breach of the GAI, because the Indemnitors had not breached the GAI in 2004. For these reasons, the court cannot enter judgment as a matter of law on this claim at this time. It requires further factual and legal development that the court will permit at the same time it considers the disposition of any deposit recovered from the Indemnitors as a result of the judgment of specific performance.

Dkt. 72 at 14.

This time around, FICR reframes the issue. Presently, FICR claims that the *likelihood* of engaging in litigation over the interpretation of the GAI created a conflict under which continued representation controlled by the Defendants would have been unreasonable. FICR additionally argues that because CT Acquisition Company was no longer owned by Defendants and had ceased operations, the obligations of the Defendants to the Spencers were limited to the indemnity obligations under the GAI. The question for the Court then becomes whether under the given circumstances, FICR was reasonable in the action it took of relieving Defendants' counsel in favor of hiring its own independent counsel. The Court is not persuaded that this action was reasonable.

As it stands, relating to the South Carolina litigation, FICR's interests were protected by the fiduciary duty owed it by the attorneys hired by Defendants. That duty was the same as it would have been if FICR had directly engaged that particular counsel. Plaintiff has not presented

9

to this Court evidence that rises beyond the speculative level. The speculative nature of the "conflict" contradicts the action taken by Defendants of providing counsel to FICR, and Plaintiff has not pointed to any specific evidence that would support their belief that maintaining Defendants' counsel was unreasonable. Therefore, the Court finds FICR's substitution of counsel to be unreasonable. This Court believes the interests of Frontier and the Indemnitors remained aligned, therefore Frontier should be required to bear the costs of its voluntary substitution of counsel.

### III. CONCLUSION

For the foregoing reasons, on the issue of the amount of deposit, the Court finds in favor of Plaintiff Frontier Life Insurance in Rehabilitation. The Defendants must deposit the amount of $1,559,256.78 with the Clerk of the District Court no later than twenty-one (21) days after the date of this Order, to be held or paid consistent with Dkt. #72. On the issue of pre-judgment and post-judgment interest, the Court finds that pre-judgment interest is not warranted; however, post-judgment interest shall be awarded and will accrue on the amount of $1,559,256.78 at the prevailing federal judgment rate from the date of this Order until the amount is deposited with the Clerk of this Court. Lastly, on the issue of Plaintiff's request for attorneys' fees, the Court finds in favor of Defendants and awards no attorneys' fees for the substitution counsel hired by Plaintiff in the South Carolina Litigation.

Furthermore, Plaintiff filed a Motion for Leave to File a Reply to Defendants' Response in Opposition to Plaintiff's Brief for Trial on Stipulated Record [Dkt. #126]. However, the ruling on the attorneys' fees issue by this Court renders Plaintiff's Reply superfluous. The Court therefore **DENIES** Dkt. #126.

Date: 05/04/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Sara R. Blevins
LEWIS & KAPPES
sblevins@lewis-kappes.com, leckert@lewis-kappes.com, hsavage@lewis-kappes.com

James E. Zoccola
LEWIS & KAPPES
jzoccola@lewis-kappes.com

Neil E. Lucas
nelattorney@msn.com

Nicholas E. Plopper
STEPHEN PLOPPER & ASSOCIATES
nick@sploplaw.com, nplopper@hotmail.com

Stephen Edwards Plopper
STEPHEN PLOPPER & ASSOCIATES
splopper@sploplaw.com, sploplaw@yahoo.com

Thomas E. Roma, Jr
PARKER & O'CONNELL
troma@parkeroconnell.com, djackson@parkeroconnell.com

James C. Wade
PARKER & CONNELL PLLC
jwade@parkeroconnell.com

Finance Deputy Clerk