UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FRONTIER INSURANCE COMPANY IN REHABILITATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Cause No. 1:08-cv-00531-TWP-DML ) |
| J. ROE HITCHCOCK, TERRY G. WHITESELL and TIMOTHY S. DURHAM, | ) ) ) |
| Defendants. | ) ) |

## AMENDED MEMORANDUM OPINION AND ORDER

Defendants Timothy S. Durham, J. Roe Hitchcock, and Terry G. Whitesell (collectively, "Indemnitors" or "Defendants") executed a General Agreement of Indemnity ("GAI") in favor of Frontier Insurance Company ("Frontier" or "Surety"). Frontier was Plaintiff Frontier Insurance Company in Rehabilitation's ("FICR") predecessor in interest. This unwieldy matter is now before the Court for disposition on the merits of FICR's action to enforce the GAI against Defendants. Three basic issues are at stake. First, FICR seeks to compel Defendants to deposit funds to be held as collateral for Defendants' indemnity obligations. Second, the parties seek a determination as to whether this deposit should include pre-judgment and/or post-judgment interest. Third, FICR seeks attorney's fees incurred in separate litigation filed in South Carolina.

Here, the parties have already agreed and stipulated to the relevant facts, and they have filed briefs summarizing their arguments. Now, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## I. FINDINGS OF FACT

On September 3, 1999 Trailer Holdings, Inc. entered into a Stock Purchase Agreement (the "Agreement"), with Thomas R. Spencer, Curtis M. Spencer, Cameron M. Evans, John Evans Manufacturing Company, Inc. d/b/a Evans Trailers and John Evans Sales Co., Inc. Section 3.3 of the Agreement provided that a Promissory Note in the face amount of $1,200,000.00 would be secured by a Surety Bond issued by Frontier.

On or about December 13, 1999, the rights of Trailer Holdings, Inc. in the Agreement were assigned to CT Acquisition Corp. On December 14, 1999, CT Acquisition Corp., as Principal ("Principal"), and Frontier, as Surety, issued a Business Buy-Out Bond (the "Surety Bond") in favor of Thomas R. Spencer, Curtis M. Spencer, and Cameron Evans (collectively, the "Obligee") in the initial penal amount of $1,200,000. The Surety Bond recites that under the terms of the Agreement, Principal agreed to pay Obligee one principal payment of $1,200,000.00 on January 1, 2005 and to secure said payment by the delivery of a Surety Bond to the Obligee.

The Surety Bond provides "in the event of a default under the Agreement, Surety shall become liable for the immediate payment to Obligee of a specific sum equal to the total of all amounts due or to become due under the Agreement which have not been paid to Obligee." The Surety Bond also provides, "PROVIDED, FURTHER, that the Initial Amount shall be automatically reduced by any amounts paid by Principal to Obligee (such Initial Amount as so reduced from time to time being hereinafter referred to as the "Reduced Amount") and the obligation of Surety hereunder shall in no amount exceed the Reduced Amount." Frontier received a five year pre-paid premium of $75,000.00 to issue the Surety Bond. Fifty percent of the premium was paid by Principal and fifty percent was paid by Obligee.

On December 13, 1999, Principal and Defendants executed the GAI in favor of Frontier. The Principal and Defendants jointly and severally agreed to:

1. At all times to indemnify and save the Company free and harmless from any and all losses, damages, costs and expenses of whatever kind or nature by reason of the execution of any of the said bonds including unpaid premiums of the Company.

2. That the Company shall have the right to adjust, settle, or compromise any claim, demand, suit or judgment upon any one or more of said bonds.

3. Upon written demand from the Company, to deposit with the Company funds to meet all its liability under said bond or bonds promptly on request and before it may be required to make payment thereunder and that any voucher or other evidence of payment by the Company of any such loss, damage, costs and expense shall be prima-facie evidence of the fact and amount of the Undersigned's liability to the Company under this Agreement.

On June 20, 2000, the Defendants sold all their shares in CT Acquisition Corp. to Trailer Equity Holdings, Inc., a Delaware Corporation owned by Fox Capital I, LLP, Champaign, Illinois. Subsequently, CT Acquisition Corp.'s business failed. To the best joint knowledge of Frontier and Defendants, CT Acquisition Corp. has ceased to exist since 2002.

On October 15, 2001, an Order of Rehabilitation was entered against Frontier by the Supreme Court of the State of New York, where Frontier is domiciled. Pursuant to the Order of Rehabilitation, all persons were "enjoined and restrained from commencing or prosecuting any actions, lawsuits, or proceedings against Frontier, or the Superintendent as Rehabilitator."[1] Frontier remains in Rehabilitation and there is no prognosis as to when, if ever, it will emerge from Rehabilitation.

On July 2, 2002, Frontier received a letter from Obligee's counsel making "Notice of Default and Demand" on Frontier for payment of the principal balance and all accrued and unpaid interest under the Agreement. This letter was forwarded to Defendants (Indemnitors) on July 29,

---

[1] On or about November 20, 2005, Spencer filed an Objection to Frontier's Notice of Determination in the rehabilitation proceeding.

2002, with a request to give the matter their immediate attention. Frontier sent a notice to Obligee disallowing its claim.

On September 13, 2002, Obligee filed suit against Frontier in the Court of Common Pleas in Sumter County, South Carolina, seeking recovery under the Surety Bond. The action was removed to the United States District Court for the District of South Carolina, Columbia Division, c/a No. 3:02-3431 JFA., Joseph F. Anderson, Jr. presiding (the "South Carolina Litigation"). Frontier filed defenses in the South Carolina Litigation alleging it has no liability under the Surety Bond due to unforeseen changes in the Principal. Defendants engaged South Carolina firm Haynsworth Sinkler Boyd, P.A. of Columbia, South Carolina in October 2002 and paid the costs of defending the South Carolina litigation ($43,983.16) on behalf of Frontier until November 2004. At that time, Frontier substituted Smith, Currie, and Hancock of Atlanta, Georgia as its new counsel in the South Carolina Litigation.

On May 27, 2003, a stay was issued in the South Carolina litigation based on the continuing rehabilitation of Frontier and the Burford abstention doctrine. By letter dated April 28, 2004 to Counsel for Defendants, Durham and Whitesell, and by letter dated May 6, 2004 to Defendant Hitchcock, Frontier demanded that the Defendants deposit collateral in the amount of $1,200,000.00 to be held by Frontier as security against any loss, damage, cost, or expense which Frontier may incur as a result of the execution of the Surety Bond.

On November 15, 2005, Judge Anderson issued an Order lifting the stay of the South Carolina Litigation and allowing the Obligee to proceed. Obligee claimed damages in a principal amount of $921,720.00, plus interest from June 1, 2002, its costs, expenses, and attorney's fees. On March 31, 2006, the United States District Court for the District of South Carolina entered a judgment in the South Carolina Litigation against Frontier in the total amount

of $1,559,256.78. On August 26, 2008, the Fourth Circuit Court of Appeals affirmed the judgment.

In 2004, Frontier brought an action in this court against Defendants (Indemnitors). This case was dismissed by Judge Tinder without prejudice, as the obligation of Defendants to make a deposit under Section 3 of the GAI had not yet been triggered. Therefore, Frontier's claims were not ripe. The present case was then filed on April 23, 2008. The parties filed cross-motions for summary judgment in April 2009. On March 30, 2010, this Court granted in part and denied in part Frontier's motion and denied Defendants' motion. Specifically, the Court's ruling ordered Defendants to make a deposit to be held by this Court until "subject to (1) an order in Frontier's rehabilitation that the funds on deposit be paid directly to the Spencers in satisfaction of their judgment *or* (2) a determination by this court that the Frontier rehabilitation is not entitled to full faith and credit by this court and that the deposit is subject to execution of the Spencer Judgment." The Court added, "[i]f neither of these determinations occurs, the deposit will be returned to the Indemnitors." However, the Court did not state a specific amount to be deposited.

Defendants appealed this ruling to the Seventh Circuit. During the pendency of the appeal, on September 10, 2010, Frontier filed a Motion to Enforce Judgment, requesting that the Court enter a specific dollar amount to be deposited by Defendants. On December 30, 2010, the Court entered an Amended Judgment granting Frontier's motion and setting a deposit amount of $1,559,256.78. Subsequently, on January 4, 2011, this Court vacated the Amended Judgment of December 30, 2010. On January 14, 2011, the Seventh Circuit dismissed Defendants' appeal, holding that the requirements of Fed. R. Civ. P. 54(b), pertaining to final judgments, had not been met, primarily because the district court judge had not determined how much money the Defendants must deposit.

Finally, in an Estate Inventory filed by Curtis Spencer on behalf of his deceased Father, Thomas Spencer, Curtis Spencer valued the CT Acquisition Note, as Guaranteed by Frontier, at $ -0-.

## II. CONCLUSIONS OF LAW

### A. What amount of deposit, if any, are Defendants required to make with the Clerk of the Court?

For all intents and purposes, the salient issues pertaining to the interpretation of the GAI have already been resolved. As they've argued previously, Defendants contend that given Frontier's status in rehabilitation, it will never be required to pay the full amount of the Spencer judgment; thus, Defendants' obligation under the GAI has not been triggered. This issue was decided via the Court's Order on March 30, 2010, which stated in relevant part:

> In the present case, both Frontier and the Indemnitors <u>continue to argue about whether section 3 is a "collateral security agreement."</u>..this court determines that the undisputed facts do *now* establish the Indemnitors' obligation under section 3 of the GAI *to deposit funds "to meet all [Frontier's] liability" under the Surety Bond*.

Dkt. 72 at 7 (emphasis added).

The Court sees no reason to reinvent the wheel. Suffice it to say, the Court agrees with the reasoning employed in the March 30, 2010 Order as to the operative triggering event under the GAI. Notably, Defendants did not file a motion under Fed. R.Civ.P. 59(e) to alter or amend the ruling on the motions for summary judgment; nor did they file a motion to reconsider. Overall, the Court agrees with Plaintiff that the issue before the Court is not whether the Defendants are obligated to deposit funds with the Court, but rather what amount is to be deposited.

FICR submits that, based on the stipulated facts and record and the applicable law, at minimum, the sum of $1,559,256.78 should be deposited by Defendants under the terms of the

Court's Judgment. As this Court found in its March 30, 2010 Order, the GAI requires the Defendants to deposit, before FICR is required to make payment, funds "*to meet all [Frontier's] liability*" under the Bond. Consistent with the Court's previous finding that the judgment in the South Carolina Action represented a "mature liability" of FICR, the amount required to "meet all of [Frontier's] liability" was, at the time of filing, $1,559,256.78.

### B. Should Defendants' deposit include pre- and post-judgment interest? If so, at what rate?

This issue was not addressed in the Court's March 30, 2010 Order. FICR contends that, based on the stipulated facts and applicable law, the deposit with the Court should include pre-judgment interest at the rate of 8% per annum from the date of March 31, 2006 forward. In that same vein, FICR contends that it is entitled to post-judgment interest at the prevailing federal judgment rate from March 30, 2010 forward. Defendants assert that because a judgment amount has never been set for a deposit, any amount of pre- and post-judgment interest awarded in favor of Frontier would be speculative and inequitable. The Court is persuaded in part.

Indiana law recognizes that "amounts which are due and which are specific, liquidated in amount, or subject to calculation allow for the assessment of pre-judgment interest." *Wilson v. Montgomery Ward & Co., Inc.*, 610 F. Supp. 1035, 1041 (N.D. Ind. 1985). Pre-judgment interest is awarded to fully compensate an injured party for the lost use of money. *Fackler v. Powell*, 923 N.E.2d 973, 977 (Ind. App. 2010); *see Cincinnati Ins. Co. v. BACT Holdings, Inc.,* 723 N.E.2d 436, 441 (Ind. Ct. App. 2000), *trans. denied.* A pre-judgment interest award is justified only where there has been an unreasonable delay in payment of an ascertainable amount. *R & R Real Estate Co., LLC v. C & N Armstrong Farms, Ltd.,* 854 N.E.2d 365, 371 (Ind. Ct. App. 2006), *reh'g denied.* Whether there has been an unreasonable delay in payment so as to justify an award of interest is a question of fact. *Clow Corp. v. Ross Twp. School Corp.,* 384 N.E.2d 1077, 1083

(Ind. App. 1979). Here, undue delay on a specific sum cannot be demonstrated and pre-judgment interest is not warranted.

As for post-judgment interest, once an amount is established for the judgment, post-judgment interest should apply to the judgment until the amount of the judgment is deposited with the Court under 28 U.S.C. §1961. *See Student Loan Marketing Association v. Lipman*, 45 F.3d 173, 176 (7th Cir. 1995). Accordingly, FICR is entitled to post-judgment interest on the sum of $1,559,256.78 under 28 U.S.C. §1961.

**C. Are Defendants liable for the attorney's fees incurred by FICR in defending the South Carolina litigation?**

As discussed above, in November 2004 while defending the South Carolina litigation, FICR replaced counsel that had been appointed by Defendants with new "independent" counsel. The Court must now resolve whether FICR is entitled to attorney's fees after it made this substitution. FICR contends that, based on the stipulated facts and record and the applicable law, it is entitled to $167,482.57 in attorney's fees.

Under Indiana law, an indemnitee is entitled to recover from indemnitors attorney's fees incurred in defending the claim subject to the indemnification agreement. *See Tack's Steel Corp. v. Arc Constr. Co., Inc.*, 821 N.E.2d 883, 890 (Ind. Ct. App. 2005). Here, the parties have stipulated that the hourly rates charged by counsel secured by Plaintiff were reasonable, so the only remaining question is whether FICR's change in counsel was reasonable. Although the Court did not decide this issue in its March 30, 2010 opinion, it did provide guidance, stating:

> Although Frontier has generally asserted a "conflict" between its interests in the Spencer Suit and the interests of the Indemnitors, it has not yet demonstrated specifically what that conflict was.…[I]t cannot simply rely on the Indemnitors' claimed breach of the GAI, because the Indemnitors had not breached the GAI in 2004. For these reasons, the court cannot enter judgment as a matter of law on this claim at this time. It requires further factual and legal development that the court will permit at the same time it considers the disposition of any deposit recovered

from the Indemnitors as a result of the judgment of specific performance.

Dkt. 72 at 14.

This time around, FICR reframes the issue. FICR claims that the *likelihood* of engaging in litigation over the interpretation of the GAI created a conflict, and, as a result, continued Defendant-controlled representation would have been unreasonable. FICR additionally argues that because CT Acquisition Company was no longer owned by Defendants and had ceased operations, the obligations of the Defendants to the Spencers were limited to the indemnity obligations under the GAI. These arguments notwithstanding, the Court is still not persuaded that FICR acted reasonably when it relieved counsel appointed by Defendants and hired its own.

Throughout the South Carolina litigation, the attorneys hired by Defendants owed FICR fiduciary duties, just as if FICR had directly engaged the counsel. Plaintiff's evidence of a conflict is, at best, speculative. Therefore, the Court finds FICR's substitution of counsel to be unreasonable. This Court believes the interests of Frontier and the Indemnitors remained aligned, and, as a result, Frontier should be required to bear the costs of its voluntary substitution of counsel.

### III.    CONCLUSION

For the above reasons, the Court finds in favor of Plaintiff Frontier Insurance Company in Rehabilitation on the **Amount of Deposit** issue. The Defendants must deposit the amount of $1,559,256.78 with the Clerk of the District Court no later than twenty-one (21) days after the date of this Order, to be held or paid consistent with Dkt. 72. On the issue of pre-judgment and post-judgment interest, the Court finds that pre-judgment interest is not warranted; however, post-judgment interest shall be awarded and will accrue on the amount of $1,559,256.78 at the prevailing federal judgment rate from the date of May 4, 2011 (the date of the original Order)

until the amount is deposited with the Clerk of this Court. Lastly, on the issue of Plaintiff's request for attorney's fees, the Court finds in favor of Defendants and awards no attorney's fees for the substitution counsel hired by Plaintiff in the South Carolina Litigation.

Finally, Plaintiff filed a Motion for Leave to File a Reply to Defendants' Response in Opposition to Plaintiff's Brief for Trial on Stipulated Record (Dkt. 126). However, the examination of the attorney's fees issue by the Court renders Plaintiff's Reply superfluous. The Court therefore **DENIES** Dkt. 126.

Date: 10/07/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

Sara R. Blevins
LEWIS & KAPPES
sblevins@lewis-kappes.com, leckert@lewis-kappes.com, hsavage@lewis-kappes.com

James E. Zoccola
LEWIS & KAPPES
jzoccola@lewis-kappes.com

Neil E. Lucas
nelattorney@msn.com

Nicholas E. Plopper
STEPHEN PLOPPER & ASSOCIATES
nick@sploplaw.com, nplopper@hotmail.com

Stephen Edwards Plopper
STEPHEN PLOPPER & ASSOCIATES
splopper@sploplaw.com, sploplaw@yahoo.com

Thomas E. Roma, Jr
PARKER & O'CONNELL
troma@parkeroconnell.com, djackson@parkeroconnell.com

James C. Wade
PARKER & CONNELL PLLC
jwade@parkeroconnell.com

Finance Deputy Clerk